IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

COMMUNITY BANK OF NORTHERN
VIRGINIA MORTGAGE LENDING
PRACTICES LITIGATION

MDL No. 1674
03cv0425 and 05cv0688

**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' Motion for Class Certification (doc no. 607 as amended by doc. no. 611). The Court has thoroughly reviewed all the documents filed in this case relevant to the issue of whether this putative class, as defined by the Joint Consolidated Amended Complaint ("JCAC") (doc. no. 507) and Plaintiffs' Motion for Class Certification, meets the requirements of Federal Rule of Civil Procedure 23. For the reasons set forth below, the Motion will be granted, the class will be certified, and Plaintiffs will be directed to present a plan to the Court for providing notice of the certification to the class.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As the United States Court of Appeals for the Third Circuit has stated, "[t]he complex factual and procedural history of these matters is set forth at length" in its prior Opinions in this case, therefore, a brief summary is all that is necessary at this juncture. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 279 (3d Cir. 2010) ("*Community Bank II*") (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) ("*Community Bank I*")).

Although the parties do not dispute that the two prior Opinions issued by the United States Court of Appeals in this matter do not constitute "law of the case,"[1] this Court finds that

---

[1] At the Class Certification hearing held before this Court on July 19, 2013, Plaintiffs' Counsel abandoned their law of the case argument and readily conceded that law of the case does not apply under these circumstances.

the Court of Appeals has provided extensive guidance in both *Community Bank I* and *Community Bank II*. The Court will, therefore, rely heavily on the Court of Appeals' observations.

As the Court of Appeals for the Third Circuit stated, this putative class action "involve[s] the alleged predatory lending scheme of the Shumway/Bapst Organization ("Shumway"), a residential mortgage loan business involved in facilitating the making of high-interest mortgage – backed loans to debt-laden homeowners." *Community Bank II,* 622 F.3d at 279. The Court of Appeals further summarized that "[b]ecause Shumway [was] not a depository lender – and thus not subject to fee caps and interest ceilings under various state laws – it allegedly formed relationships with defendant Community Bank of Northern Virginia ("CBNV") . . . . [a] financially distressed bank . . . to circumvent these restrictions." *Id*.

CBNV's association with Shumway "allegedly permitted Shumway to conceal the origin of the loans, thus creating the appearance that fees were paid solely to a depository institution when, in reality . . . the overwhelming majority of the fees and other charges associated with the loans were funneled to Shumway." *Id*. at 279-80 (citation, internal punctuation, and internal quotations omitted). CBNV was acquired by Mercantile Bankshares Corp. in 2005. Mercantile is now owned by PNC Bank, N.A. ("PNC"). There is no dispute that PNC is the successor to CBNV, through its acquisition of Mercantile. However, for clarity and consistency, and to reflect that it is solely the conduct of CBNV that is at issue here, the Court will continue to refer to Defendant PNC as CBNV throughout this Opinion.

The action at issue began as a number of actions filed in this Court and throughout the country. The Judicial Panel on Multidistrict Litigation ("MDL Panel") created MDL No. 1674 and transferred the actions that originated elsewhere to this Court. *In re Cmty. Bank of N. Va. Mortgage Lending Practices Litig.*, 368 F. Supp. 2d 1 354 (J.P.M.L. 2005). There is no reason to

set forth the long and convoluted procedural history of this case. Suffice it to say that some Plaintiffs and Defendants agreed to settle this case on a class-wide basis first, in 2003, and then again, in 2008. This Court (through Opinions and Orders entered by the late Chief Judge Lancaster) certified the class and preliminarily approved those settlements after extensive analysis. After each preliminary approval, this Court directed the parties to provide notice to the class. The class was informed of the certification and the proposed settlement, twice. After allowing time for class members to either opt out of the class or object to the terms of the settlements both times, this Court finally approved the settlements and entered final judgments. The Court of Appeals for the Third Circuit reversed twice, based upon the objections of some class members. These class members objected to the certifications and settlements solely on the basis of the named Representatives' purported inadequacy under Fed.R.Civ.P. 23(a)(4).

On remand after the second appeal, Plaintiffs and the former Objectors joined forces to file all of their potential claims against all Defendants by filing the JCAC. In doing so, Plaintiffs followed the guidance provided by the Court of Appeals in *Community I* and *Community II*, and jointly asserted claims pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* as amended by the Home Ownership Equity Protection Act ("HOEPA"), 108 Stat. 2190, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Plaintiffs also reasserted their Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., claims.[2]

The JCAC originally named as Defendants CBNV, Federal Deposit Insurance Corporation ("FDIC") as the Receiver for Guaranty National Bank Of Tallahassee ("GNBT"),

---

[2] The Court would note that the Motion for Certification is silent at to any state law claims, and thus, this Court will not address those potential state law claims and thereby excluding them from the certification process.

PNC Bank as successor to CBNV, and GMAC-Residential Funding Company n/k/a Residential Funding Company ("RFC"). Doc. No. 507, ¶1. On May 15, 2012, RFC filed a Notice of Bankruptcy and Effect of Automatic Stay. Doc. No. 564. On September 18, 2012, all claims against RFC were stayed in relation to this case.[3] Doc. No. 584. The FDIC was named as Defendant solely in its capacity as receiver for GNBT. See doc. no. 507, ¶ 1. This Court granted FDIC's Motion to Dismiss for lack of subject matter jurisdiction. Doc. Nos. 605 & 610. Therefore, the only remaining claims that are currently before the Court are those asserted by Plaintiffs against CBNV.

Pursuant to Rule 23, Brian W. and Carla M. Kessler, Flora A. Gaskin, Philip F. and Jeannie C. Kossler, John and Kathy Nixon, John and Rebecca Picard, William and Ellen Sabo, and Tammy and David Wasem ask this Court to certify each of the claims alleged in the JCAC for class treatment. Those claims are: (1) at Count I for CBNV's violations of RESPA; (2) at Count II for CBNV's violations of TILA as amended by HOEPA for Inaccurate and Understated Material Disclosures; (3) at Count III for Other, Multiple Violations of the Substantive Provisions of TILA and HOEPA; and (4) at Count V for Violations of RICO.

Plaintiffs ask the Court to certify a class defined as "All persons nationwide who obtained a second or subordinate, residential federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling, for the period May 1998 - December 2002." Doc. No. 607. Plaintiffs also ask this Court to certify the following subclasses:

> Sub-Class 1: (RESPA ABA Disclosure Sub-Class) (Plaintiffs Philip and
> Jeannie Kossler) – All persons nationwide who obtained a second or subordinate,

---

[3] As a matter of "housekeeping" JP Morgan Chase had been previously named as a Defendant as trustee for the trusts and loan pools created by RFC (doc. no. 507, ¶ 48), but the case against JP Morgan Chase was also effectively stayed by doc. no. 584.

4

residential, federally related, non purchase money, mortgage from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998 - October 1998.

Sub-Class 2: (RESPA Kickback Sub-Class)(Plaintiffs Brian and Carla Kessler; and John and Rebecca Picard) – All persons nationwide who obtained second or subordinate, residential, federally related, non purchase money, mortgage from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period October 1998 - November 1999.

Sub-Class 3: (TILA/HOEPA Non Equitable Tolling Sub-Class)(Plaintiffs Kathy and John Nixon; Flora Gaskin; and Tammy and David Wasem) – All persons nationwide whoobtained second or subordinate, residential, federally related, non purchase money, mortgage from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1, 2000 - May 1, 2002.

Sub-Class 4: (TILA/HOEPA Equitable Tolling Sub-Class)(Plaintiffs All Plaintiffs other than the Nixons, the Wasems and Flora Gaskin) – All persons nationwide who obtained second or subordinate, residential, federally related, non purchase money, mortgage from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998 - April 30, 2000.

Sub-Class 5: (RICO Sub-Class)(Plaintiffs John and Rebecca Picard; Brian and Carla Kessler) – All persons nationwide who obtained second

or subordinate, residential, federally related, non purchase money, mortgage from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998 - November 1999.

Doc Nos. 607 & 611. Defendant CBNV opposes the Motion for Class Certification.

**II. STANDARD OF REVIEW**

This Court has federal question jurisdiction over the claims remaining in this case pursuant to 28 U.S.C. §1331. Venue is proper in this District pursuant to 28 U.S.C. § 1407. "When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004); *Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir. 2000); *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994); *Menowitz v. Brown*, 991 F.2d 36, 40-41 (2d Cir. 1993). Rule 23 is a federal law. Accordingly, this Court will apply the law of the United States Court of Appeals for the Third Circuit to this Motion for Class Certification.

As the Court of Appeals for the Third Circuit has instructed, in order to certify a class under Fed.R.Civ.P. 23, this Court must determine whether, in its sound discretion, the four requirements of Rule 23(a) are met and, if so, the Court must then determine whether the "class fits within one of the three categories of class actions in Rule 23(b)." *Community Bank II*, 622 F.3d at 291.

Rule 23 is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct 2541, 2550 (2011) (citation omitted). As the United States Supreme Court explained, "Rule 23 does not set forth a mere pleading standard . . ." but rather "[a] party seeking class certification must affirmatively

6

demonstrate his compliance with the Rule . . . ." *Id* at 2551. Further, as the Supreme Court recently explained, Plaintiffs "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Beherend*, 133 S.Ct. 1426, 1428 (2013). The Supreme Court has directed the Court to undertake a "rigorous analysis" to determine whether Plaintiffs have established each element of Rule 23 at the time of certification. *Wal-Mart*, 131 S.Ct. at 2551.

Rule 23(a), which "[e]very putative class must satisfy," requires that:

> (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defense of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation . . . .)

*Community Bank II*, 622 F.3d at 291 (citations and internal quotations omitted). If these requirements are met, the Court must then analyze whether the putative class satisfies at least one section of Rule 23(b).

Plaintiffs seek certification pursuant to Rule 23(b)(3), "which requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method of adjudication (superiority)." *Id*. The factors the Court must consider include:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(A-D).

In addition, since Plaintiffs propose to certify this class for trial, the Court must determine "whether the case, if tried, would present intractable management problems . . . ." *Community Bank II*, 622 F.3d at 291; *In re LifeUSA Holding Inc.*, 242 F.3d 136, 148 (3d Cir. 2001) (Court must determine "if tried as a class action, [this case] could be efficiently and fairly managed, which is the polestar of Rule 23(b)(3)"). In addition, since this is not a settlement class, but rather a class for trial, the Court must analyze "the likely difficulties of managing a class action." Fed.R.Civ.P. 23(b)(3)(D).

It is important to note that the Court of Appeals for the Third Circuit "and other circuit courts have . . . rejected the proposition that [Rule 23] categorically prohibits the evaluation of the merits of class claims at the certification stage." *Community Bank II,* 622 F.3d at 293. "[A] merits inquiry is precluded at the class certification stage where it is not necessary to determine a Rule 23 requirement." *Id*. (citation and internal quotation omitted). The Court of Appeals noted that "in reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can properly be resolved as a class action." *Id*. (citation omitted). Moreover, "[b]ecause each requirement of Rule 23 must be met, a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Id*. (citation and internal quotation omitted).

However, the Court must be mindful that "the extent to which a district court may consider the merits of claims in ruling on a class certification motion has limits." *Community Bank II,* 622 F.3d at 294. The Court of Appeals for the Third Circuit has instructed that "[w]hen a district court properly considers an issue overlapping the merits in the course of determining whether a Rule 23 requirement is met, it does not do so in order to predict which party will prevail on the merits." *Id*. (citation and internal quotation omitted). Therefore, "merits inquiry is

8

not permissible when the merits issue is unrelated to a Rule 23 requirement." *Id*. (citation and internal quotation omitted). Thus, "it remains true that in determining the propriety of a class action, the question is *not whether the plaintiff or plaintiffs have stated a cause of action . . .* but rather whether the requirements of Rule 23 are met." *Id*. (citation and internal quotation omitted) (emphasis and ellipsis in original).

**III. DISCUSSION**

In accordance with the guidance the Court of Appeals for the Third Circuit has provided with respect to this case, the Court turns its attention to whether Plaintiffs, in the JCAC, have met the requirements of Rule 23.

**A. Rule 23(a)**

As the Court of Appeals for the Third Circuit instructed, "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *Community Bank I*, 418 F.3d at 302.

As noted above, Plaintiffs must establish the four (4) requirements of Rule 23(a): numerosity, commonality, typicality and adequacy. "Because . . . commonality and typicality, are similar to (but less rigorous than) Rule 23(b)(3)'s predominance inquiry, Courts often discuss them together." *Opperman v. Allstate N.J. Ins. Co.*, 2009 WL 3818063, *7 (D.N.J. Nov. 13, 2009) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996)). As the Court of Appeals for the Third Circuit has instructed, "commonality, like numerosity, evaluates the sufficiency of the class itself, and typicality like adequacy of representation, evaluates the named plaintiff(s) . . . ." *Community Bank I,* 418 F.3d at 302 (citation and internal quotation omitted).

Plaintiffs must also establish that the class fits within one of the three categories set forth in Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b), which requires the Court to "determine that common questions of law or fact predominate and that the class action mechanism is the superior method for adjudicating the case." *Id*.

### 1. Numerosity

There is no dispute that there are approximately 22,000 members of the putative class. This number meets and, in fact far exceeds, the requirements of Rule 23(a)(1). *See Community Bank II*, 622 F.3d at 284 (citing *Community Bank I*, 418 F.3d at 303-10); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 273 (3d Cir. 2009) ("numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement"). On the record before the Court at this time, the sub-classes are also sufficiently numerous.

### 2. Commonality and Typicality

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The United States Supreme Court has noted that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart,* 131 S.Ct. at 2551 (citation and internal quotation omitted). Moreover, "[w]hat matters to class certification . . . is not the raising of common questions . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (citation and internal quotation omitted).

The Court of Appeals opined in *Community Bank I*, that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Community Bank I*, 418 F.3d at 303; *see also Community Bank II*, 622 F.3d at 284. Granted, the Court of Appeals

was providing instruction to this Court on remand regarding the Plaintiffs' RESPA claims, and was analyzing a Complaint that has been superseded by the JCAC. That being said, Plaintiffs merely followed the Court of Appeals for the Third Circuit's direction by adding the TILA/HOEPA and RICO claims. The viability of these claims is ascertainable by examining identical loan documents.

The Court of Appeals further opined, with regard to typicality, that "the concepts of commonality and typicality are broadly defined and tend to merge." *Community Bank I*, 418 F.3d at 303 (citation and internal quotation omitted). The Court of Appeals, in providing guidance to this Court on remand, observed that "[c]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Id*. (citation and internal quotation omitted). Thus, "[b]ecause the claims of all class members here depend on the existence of the Shumway scheme, their interests are sufficiently aligned such that the class representatives can be expected to adequately pursue the interests of the absentee class members." *Id*. (citation, internal quotation, and internal punctuation omitted). Accordingly, although the Court expresses no opinion on the merits of these claims at this juncture, the Court finds that Plaintiffs have satisfied their burden under Rule 23. The Court also finds that any further inquiry into the merits at this stage of the litigation would be impermissible, as that inquiry is "unrelated to a Rule 23 requirement." *Community Bank II*, 622 F.3d at 294 (citation and internal quotation omitted).

### 3. Adequacy

To observe that much ink has been spilled on this issue, both in this Court and the Court of Appeals for the Third Circuit, on this issue would be an understatement. As the Court of

Appeals stated, the Rule 23(a)(4) adequacy requirement "encompasses two distinct inquiries designed to protect the interests of the absent class members: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Community Bank I*, 418 F.3d at 303. In *Community II,* the Court of Appeals noted that "[it] continue[d] to have concerns – essentially the same as those [] identified in *Community Bank I* – regarding whether the named plaintiffs and their counsel are adequate representatives." *Community Bank II*, 622 F.3d at 303.

Fortunately, the Court of Appeals for the Third Circuit, in order "to aid the Court on remand," provided an explanation of:

> [its] concerns . . . focusing specifically on (a) the apparent intra-class conflict with respect to the statute-of-limitations problem, which may raise questions regarding the named plaintiffs' adequacy under Rule 23(a)(4); and (b) class counsel's justifications for the decision not to assert TILA/HOEPA claims on behalf of the class, which may raise questions regarding counsel's adequacy under Rule 23(g).

*Id*.

As to the intra-class conflict, the Court of Appeals for the Third Circuit stated its view that the potential "intra-class conflict is by no means fatal to whether these cases can be maintained as a class action . . . [t]he most obvious remedy is to create subclasses as [it] suggested in [*Community Bank I*]." *Id*. at 304. Plaintiffs are seeking certification of sub-classes. According the Court of Appeals for the Third Circuit in *Community Bank I* and *Community Bank II*, although admittedly *dicta*, sub-classes could satisfy Rule 23(a)(4), if they are deemed to be "necessary and appropriate." *Id*., citing *Community Bank I*, 418 F.3d at 310. Given the Court of Appeals' statements in *Community Bank I* and *Community Bank II*, this Court finds that the subclasses, as identified and described by Plaintiffs (see Section I., *infra.*), are in fact, necessary and appropriate.

As to the second concern relating to counsel's adequacy under Rule 23(g), the Court of Appeals acknowledged that:

> [it] did not elaborate in *Community Bank I* on the type of inquiry a district court should engage in when addressing class counsel's adequacy in light of the decision to bring some, but not other, potentially colorable claims on behalf of the class and [] need not do so definitively here.

*Community Bank II*, 622 F.3d at 305. However, the Court of Appeals emphasized that "the determination of whether class counsel is adequate is committed to a district court's sound discretion, as it is in a better position than [the Court of Appeals] to evaluate class counsel's performance." *Id*. at 308.

CBNV challenges the adequacy of interim class counsel on the basis that they have changed their position, joined forces, and filed a JCAC which asserts all potentially colorable claims, including those pursuant to TILA/HOEPA. This does not appear to the Court to be a sign of inadequacy of counsel. Rather, interim class counsel simply agrees with the Court of Appeals for the Third Circuit. Further, the Court, although not as familiar with the conduct of interim class counsel in <u>other</u> cases, was favorably impressed by their advocacy during the Rule 12(b)(6) briefing and oral argument, as well as with the quality of the all other relevant documents filed by interim class counsel in this case.

The only issue regarding adequacy of counsel that has given this Court pause is whether or not each sub-class should be given its own counsel. Fortunately, the Court of Appeals for the Third Circuit has recently provided substantial direction on this issue as well. In *Dewey v. Volkswagen Akteingesellshaft*, 681 F.3d 170 (3d Cir. 2012), the Court of Appeals discussed the circumstances under which a class and sub-classes may be represented by the same counsel. In summary, the Court of Appeals has instructed the Court to analyze whether there is a "fundamental" conflict under the circumstances presented. *Id*. at 183-84. "A fundamental

13

conflict exists where some class members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*. at 184. Here, Plaintiffs' proposed five sub-classes in order to ameliorate the statute of limitations problems identified by the Court of Appeals in *Community Bank I* and *Community Bank II*. The conduct of CBNV was the same as to all class members. The only real distinction is a temporal one, that is, when this conduct occurred. Accordingly, there is no fundamental conflict here, and Class Counsel can represent both the class and the sub-classes.

In the exercise of its sound discretion, the Court concludes that there is no fundamental conflict here that would preclude Interim Co-Lead Counsel from representing both the class and all of the sub-classes.

On the record before the Court at this time, Plaintiffs have satisfied the requirements of Rule 23(a)(4).

**B. Rule 23(b)(3)**

**1. Predominance and Superiority**

The Court of Appeals for the Third Circuit has instructed that "[t]o meet the requirements of Rule 23(b)(3)," this Court "must find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Community Bank I*, 418 F.3d at 308. Further, "[t]he predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Id*. at 308-09. In addition, although this is not now a settlement class, "a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defense of the named representatives must be typical of the claims [or] defenses of the class." *Id*. at 309. The

Court of Appeals concluded in *Community Bank I* that "just as the record below supports a finding of typicality it also supports a finding of predominance." *Id*; *see also Community Bank II*, 622 F.3d at 284. In summary, the Court of Appeals noted that "[a]ll plaintiffs' claims arise from the same alleged fraudulent scheme." *Community Bank I,* 418 F.3d at 309.

As to superiority, this "requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Community Bank I*, 418 F.3d at 309 (citation and internal quotation omitted). On the record developed before the first remand, the Court of Appeals for the Third Circuit "[found] no reason, and [CBNV] fail[s] to offer any, why a Rule 23(b)(3) class action is not the superior means to adjudicate this matter." *Id*. This Court also observes, as an aside, that at this point, individual class members would face some difficult, if not insurmountable, tolling issues if they were required to file suit on their own behalf at this time which, in many cases, is almost a decade after they first received notice that this case had been prosecuted and settled for them.

Accordingly, again, while the Court expresses no opinion on the merits of these claims on a more fully developed record, Plaintiffs have satisfied their burden under Rule 23. Any further inquiry into the merits at this stage would be impermissible, as that inquiry is "unrelated to a Rule 23 requirement." *Community Bank II*, 622 F.3d at 291 (citation and internal quotation omitted).

### 2. Manageability

This is the first instance in which a Rule 23(b)(3)(D) inquiry, *i.e.*, whether there are "likely to be difficulties in managing the class action," is at issue in this case. The Court notes that Rule 23(d) vests in the Court substantial discretion to enter orders, subsequent to the Order Certifying the Class that will follow, to manage the class. The United States Court of Appeals

for the Seventh Circuit has identified a number of "imaginative solutions to problems created by the presence in a class action litigation of individual damages." *Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir. 2004) (citations omitted). This Court expresses no opinion at this juncture which of those solutions, save the creation of sub-classes, which has been crucial here, may be necessary. This Court finds that speculative, and premature, analysis is not necessary to resolve the question of manageability. This class action is manageable to try as to liability, even if damages issues may require some inquiry into facts specific to individual class members.

**IV. CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Class Certification (doc. no. 607) will be GRANTED. An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Court Judge

cc:   All Registered ECF Counsel