IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA SECOND MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674<br><br>Case No. 03-0425<br>Case No. 05-0688<br><br>Hon. Arthur J. Schwab |

**BRIEF IN SUPPORT OF MOTION TO CONFIRM COSTS AND
ATTORNEYS' FEES AWARDED TO R. BRUCE CARLSON, ESQUIRE**

AND NOW comes R. Bruce Carlson, Esquire, by and through counsel, Burns White LLC, and files the within Brief in Support of Motion to Confirm Costs and Attorneys' Fees Awarded to R. Bruce Carlson, Esquire:

**I.      INTRODUCTION**

On December 13, 2016, the Court granted final approval of the class action settlement in this action (the "Litigation"). See Final Order Pursuant to Fed. R. Civ. P. 23 Granting Final Approval of Class Action Settlement (Dkt. No. 776) (the "Final Order"). Pursuant to the Final and Binding Settlement Agreement (Dkt. No. 759) approved by the Court, a three-person arbitration panel (the "Arbitrators") was directed to determine an appropriate award of attorneys' fees and expenses for class counsel. See Dec. 13, 2016 Text Order (Dkt. No. 775). On March 24, 2017, the Arbitrators approved the payment of attorneys' fees to class counsel in an amount equal to 35% of the final settlement amount in the Litigation; the arbitrators also approved the payment of costs and expenses incurred by class counsel. See Unanimous Decision of Arbitrators ¶¶ 5-7 (Dkt. No. 778). As determined by the Arbitrators, "[n]o fees, costs or expenses are approved or authorized except as described" in the Arbitrators' decision. Id.  The

Arbitrators further determined that attorneys' fees were "to be allocated among the various Class Counsel as they have previously agreed." Id. ¶ 5.

On June 5, 2017, Specter Specter Evans & Manogue, P.C. (the "Specter Firm") filed a Complaint against R. Bruce Carlson ("Mr. Carlson") in the Court of Common Pleas of Allegheny County, Pennsylvania at docket number GD-17-008330.  The Complaint asserted two Counts against Mr. Carlson: Count I for alleged breach of contract and Count II for an accounting of attorneys' fees awarded in this Litigation.  As averred in the Complaint, the Specter Firm purports to be "entitled" to approximately $1.9 million of the attorneys' fees awarded to Mr. Carlson in this Litigation – as alleged, "the fee due [Mr.] Carlson/The Specter Firm should have been approximately $2,450,499.00 … [and] the Specter Firm should receive $1,890,759.42" of the fees awarded to Mr. Carlson by the Arbitrators.  See Compl. ¶ 36 (Dkt. No. 781-1).

Because this Court retained jurisdiction to resolve "any disputes, claims or causes of action that, in whole or in part, are related to the administration and/or enforcement of the Agreement, Settlement, [or the Final] Order (including, without limitation … whether any claim or cause of action is or is not barred by [the Final] Order" (see Final Order ¶ 12(a)), on June 27, 2017, the Court entered an Order staying the Specter Firm's state-court litigation (see Order (Dkt. No. 782)) and an Order establishing a briefing schedule to adjudicate the Specter Firm's claims pursuant to the Court's ancillary jurisdiction (see Order (Dkt. No. 783)).[1]

---

[1] On July 3, 2017, the Specter Firm filed a Motion (Dkt. No. 784) and Brief in Support of Motion to Vacate Orders of Court Asserting Ancillary Jurisdiction, Staying State Court Proceedings and Scheduling Briefs (Dkt. No. 785).  Arguing that the Specter Firm's "claim against Carlson is an action between two private parties which has no impact whatsoever on the ability of this Court to enforce its judgments or manage settlement of [the] class action," the Specter Firm alleges that ancillary jurisdiction is not applicable to the resolution of fee disputes "involving an attorney . . . and former law firm."  See Brief

2

## II.     FACTS AVERRED BY THE SPECTER FIRM

According to the Complaint, and more than a decade ago – between April 2001 and February 2003 – cases later consolidated in the Litigation were filed by Mr. Carlson "on behalf of fourteen people who responded to inquiries by the Specter Firm and signed Representation Letters with The Specter Firm.  Many of these people would go on to serve as class representatives in the ultimate settlement of this case."  See Compl. ¶ 19.  As the Specter Firm acknowledges, Mr. Carlson was employed by the Specter Firm as an attorney from November 2000 through April 2004, when Mr. Carlson resigned his position.  See id. ¶¶ 14, 25.  Thereafter, on June 30, 2004, Mr. Carlson and the Specter Firm executed a Separation Agreement (Exhibit B to the Complaint) that "resolv[ed] and memorialize[ed] all issues relating to Carlson's employment" at the Specter Firm.  See Separation Agreement (Dkt. No 784-1 p. 30 of 76).  The Separation Agreement "continue[d] intact" a February 6, 2004 Agreement between the Specter Firm and Mr. Carlson.  Id. ¶ 16.  The February 6, 2004 Agreement provided that the Specter Firm could receive a share of any attorneys' fees awarded to Mr. Carlson in the Litigation

---

in Support of Motion to Vacate at 5-6.  Directly contrary to the crux of the Specter Firm's argument, however, the Third Circuit in Novinger v. E.I. DuPont de Nemours & Co., 809 F.2d 212, 217-18 (3d Cir. 1987) cited approvingly other cases wherein ancillary jurisdiction was held to provide federal courts with "the power to monitor contingent fee arrangements" and "jurisdiction to redetermine contingent fees."  The Novinger Court left "for another day the question [of] whether ancillary jurisdiction extends to the resolution of a post settlement fee dispute between two attorneys, only one of whom was attorney of record."  Id. at 281 n.4.  The Specter Firm attempts to avail itself of this question left by the Novinger Court "for another day" by arguing that the Specter Firm was not "counsel [of record] in the class action" and thus did not subject itself to this Court's jurisdiction.  See Brief in Support of Motion to Vacate at 7.  That argument is fundamentally in error, however, because the Specter Firm acknowledges that "[v]irtually all of the class representatives [here] were originally clients of SSEM [the Specter Firm]. . . [and] while [this] case was pending [Mr.] Carlson made a decision to depart [the Specter Firm] and form his new firm."  See id. at 13.  It is beyond peradventure that the Specter Firm was counsel of record in this Litigation and, indeed, that Mr. Carlson, an attorney employed by the Specter Firm until June 2004, appeared in this Litigation as an attorney on behalf of Specter Firm.  See, e.g., Compl. ¶¶ 19, 25.

"assuming the district court's Order [approving the class settlement in December 2003] is affirmed on appeal." See February 6, 2004 Agreement (Dkt. No. 784-1 p. 60 of 76).

### III. THE SPECTER FIRM'S BREACH OF CONTRACT CLAIM FOR ATTORNEYS' FEES AGAINST R. BRUCE CARLSON, ESQUIRE FAILS AS A MATTER OF LAW

The Separation Agreement expressly and unambiguously provided that Mr. Carlson would only share a fee with the Specter Firm in those cases that were settled, or nearly settled. See Separation Agreement ¶ 16, p. 8, fourth paragraph. In fact, for all of Mr. Carlson's cases, the Separation Agreement expressly disaffirmed any fee sharing arrangement with the Specter Firm for any cases that remained in active litigation. Id. Consistent with this fact, Mr. Carlson's obligation to share any of the attorneys' fees that he might ultimately receive in the Litigation was expressly contingent upon the Third Circuit approving the proposed December 2003 settlement of the Litigation. That contingency never occurred. Instead, the Third Circuit vacated the District Court's Order approving the settlement and many years and thousands of hours of litigation followed. Therefore, the Separation Agreement expressly precludes the Specter Firm from sharing in any of the attorneys' fees generated in the Litigation.

#### A. No Payment Is Owed To The Specter Firm Because A Condition Precedent To Payment Did Not Occur

A contractual condition precedent is "an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am., 693 F.3d 417, 430 n.6 (3d Cir. 2012), citing Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 139 (Pa. 1999). While words such as "provided" and "however" are often utilized by contracting parties to establish a condition (see Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 224 (3d Cir. 1983)), in Pennsylvania, the parties to a contract need not utilize any particular

4

words to create a condition precedent. Pisarz v. PPL Corp., 604 F. App'x 196, 201 (3d Cir. 2015). "If a condition precedent is not fulfilled, the non-performing party is relieved of its contractual promise to perform." MBR Constr. Servs., Inc. v. IBEW Local, 2016 WL 815566, at *7 (M.D. Pa. Mar. 2, 2016); see also Pac. Employers Ins. Co., 693 F.3d at 430 n.6 (holding that under Pennsylvania law, when a condition precedent has not occurred, the duty to perform the contract lays dormant and no damages are due for non-performance). Moreover, "the party asserting breach of a conditional promise" – here, the Specter Firm – "bears the burden of proving satisfaction of the precondition." See MBR Constr. Servs., Inc., 2016 WL 815566, at *7, citing Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1007-08 (3d Cir. 1980). The parties' intent in creating a condition precedent is a legal matter for the Court to determine. Mack Trucks, Inc. v. BorgWarner Turbo Sys., Inc., 2011 WL 1045108, at *2 (E.D. Pa. Mar. 22, 2011), aff'd, 508 F. App'x 180 (3d Cir. 2012).

Here, seeking the windfall recovery of nearly $1.9 million of attorneys' fees to which it is not entitled, the Specter Firm disregards the plain language of its contractual agreements with Mr. Carlson – which unequivocally contain an unsatisfied condition. Indeed, the Specter Firm's June 30, 2004 Separation Agreement with Mr. Carlson "continue[d] intact" a February 6, 2004 Agreement between the Specter Firm and Mr. Carlson. See Separation Agreement ¶ 16 (Dkt. No 784-1 p. 30 of 76). The February 6, 2004 Agreement, in turn, provided that the Specter Firm could receive a share of any attorneys' fees awarded to Mr. Carlson in the Litigation "***assuming*** the district court's Order [approving the class settlement in December 2003] is affirmed on appeal." See February 6, 2004 Agreement (Dkt. No. 784-1 p. 60 of 76) (emphasis added). Such language is neither ambiguous nor susceptible to more than one interpretation: ***if*** the District

Court's December 2003 Order was affirmed on appeal, *then* the Specter Firm could share in attorneys' fees.

But the District Court's Order was not affirmed on appeal – the Third Circuit Court of Appeals "vacate[d] the settlement Order and remand[ed] [the case] to the District Court." See In re Cmty. Bank of N. Virginia, 418 F.3d 277, 302 (3d Cir. 2005). Any contractual duty that could have been owed by Mr. Carlson was thus extinguished: given the presence of an unfulfilled condition, any duty to perform "lays dormant and no damages are due for non-performance." See Pac. Employers Ins. Co., 693 F.3d at 430 n.6.

Unable to refute the incontrovertible fact that the District Court's December 2003 Order regarding settlement was vacated by the Third Circuit and that the Litigation continued for an additional 13 years thereafter until the entry of this Court's Final Order in December 2016, the Specter Firm resorts to alleging that the Separation Agreement "provided that it would remain intact irrespective of [Mr.] Carlson's ongoing responsibilities in the matter and any time that [Mr.] Carlson may devote to the appeal of the settlement's approval and thereafter." See Compl. ¶ 38. In short, the Specter Firm adopts the legally untenable position that the meaning of the Separation Agreement is not to be found in the words of the contract but that, instead, Mr. Carlson purportedly agreed not only to expend the time necessarily "devote[d] to the appeal of the settlement's approval" but, according to the Specter Firm, thereafter: (1) agreed to continue to represent the interests of the class in the Litigation for an unlimited spectrum of time, (2) with all ongoing costs to be borne by Mr. Carlson yet, (3) with 80% of the total fees awarded to Mr. Carlson accruing to the Specter Firm. Such an "interpretation" of the Separation Agreement is not only absurd but also legally impermissible.

The Separation Agreement "continue[d] intact" the February 6, 2004 Agreement between the Specter Firm and Mr. Carlson.  See Separation Agreement ¶ 16.  The February 6, 2004 Agreement, in turn, expressly provided as follows: "[r]egarding the portion of [approved total counsel fees] that is ultimately paid to Bruce Carlson and/or [the Specter Firm], assuming the district court's Order is affirmed on appeal, Carlson shall be entitled to 20% of the first $2,000,000 and 35% of all amounts in excess of $2,000,000."  Thus, the February 6, 2004 Agreement provided for the potential recovery by the Specter Firm of a portion of attorneys' fees awarded in this Litigation *only if* the December 2003 Settlement Order was affirmed on appeal.  It was not.  Nevertheless, to evade the plain language of the February 6, 2004 Agreement, the Specter Firm alleges that in the Separation Agreement, Mr. Carlson purportedly agreed to vitiate the terms of the February 6, 2004 Agreement by agreeing to pay a portion of attorneys' fees to the Specter Firm, "irrespective of [Mr.] Carlson's ongoing responsibilities in the matter and any time that [Mr.] Carlson may devote to the appeal of the settlement's approval and thereafter."  See Compl. ¶ 38.

This "interpretation" of the February 6, 2004 Agreement and the Separation Agreement violates a fundamental legal principle: a contractual interpretation which produces a "reasonable, lawful, and effective meaning to all the [contract's] terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."  Gustine Uniontown Assocs., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc., 892 A.2d 830, 837 (Pa. Super. Ct. 2006); Tamarind Resort Assocs. v. Gov't of Virgin Islands, 138 F.3d 107, 111 (3d Cir. 1998) (same holding).  The only reasonable, lawful and effective meaning applicable to the Separation Agreement's "continu[ing] intact" the February 6, 2004 Agreement is that the phrase "irrespective of [Mr.] Carlson's ongoing responsibilities in the matter and any time that [Mr.]

7

Carlson may devote to the appeal of the settlement's approval and thereafter" relates solely to the time and responsibilities that Mr. Carlson would have had as Class Counsel had the 2003 settlement of the class been approved on appeal. Any other interpretation of that phrase renders meaningless the parties' express intention in the Separation Agreement – that the February 6, 2004 Agreement would "continue intact."

The Specter Firm, as the party asserting breach of a conditional promise, thus cannot meet its burden to demonstrate that satisfaction of the precondition requisite to the payment of any attorneys' fees to the Specter Firm occurred. See MBR Constr. Servs., Inc., 2016 WL 815566, at *7, citing Mellon Bank, N.A., 619 F.2d at 1007-08. Consequently, because a condition precedent in the contractual agreements was not fulfilled, Mr. Carlson has no contractual duty to perform. Pac. Employers Ins. Co., 693 F.3d at 430 n.6. The Specter Firm was to receive a share of any attorneys' fees awarded to Mr. Carlson in the Litigation only if – and "assuming" – "the district court's Order [approving the class settlement in December 2003] is affirmed on appeal." See February 6, 2004 Agreement. Because the District Court's December 2003 Order approving class settlement was not affirmed on appeal, no breach of contract has occurred and the Specter Firm is not entitled to any payment from Mr. Carlson.

### B. Good Faith Precludes Any Recovery From Mr. Carlson

Even if the Specter Firm's "interpretation" of the applicable contractual provisions was correct – and it is not – good faith precludes any recovery of attorneys' fees from Mr. Carlson. Under Pennsylvania law, inherent in every contract is the duty of contracting parties to perform their contractual obligations in good faith. Tuno v. NWC Warranty Corp., 552 F. App'x 140, 144 (3d Cir. 2014). This "covenant of good faith functions 'as an interpretive tool' to aid the court in evaluating breach of contract claims.'" Id., quoting Northview Motors, Inc. v. Chrysler

8

Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000).  Moreover, good faith serves as the lens through which the "parties' justifiable expectations in the context of a breach of contract action" are viewed.  Northview Motors, Inc. 227 F.3d at 91.

As written, the contracts speak to Mr. Carlson accepting one-fifth of the attorneys' fees awarded to him based upon the work he had performed to reach the 2003 settlement, and any future work he would perform as Class Counsel to effectuate the 2003 settlement.  But the 2003 settlement was not consummated: 13 years of additional litigation ensued.  Thus, here, application of the interpretive lens of good faith to the Separation Agreement and the February 6, 2004 Agreement irrefutably demonstrates that the Specter Firm is not entitled to recover from Mr. Carlson and that the Specter Firm's "interpretation" of the applicable contractual provisions is fundamentally flawed.

Indeed, and, first, the Specter Firm's contractual "interpretation" wholly ignores what actually transpired in the Litigation: Mr. Carlson expended 13 years of additional time, effort and expense to bring the Litigation to a successful conclusion after the entry of Judge Lancaster's December 2003 Settlement Order.  As is apparent from the face of both the Separation Agreement and the February 6, 2004 Agreement, the contracts contemplated a fee-sharing arrangement with the Spencer Firm only under a factual scenario in which the December 2003 Settlement Order was affirmed on appeal.  See February 6, 2004 Agreement (regarding the attorneys' fees paid to Mr. Carlson and the Specter Firm, the Agreement "assum[ed] the district court's Order is affirmed on appeal"); Separation Agreement ¶ 16 (Mr. Carlson and the Specter Firm were to be "entitled to fifty-percent (50%) of the $8.1 million fee approved in this case" in Judge Lancaster's December 2003 Settlement Order).  That scenario – in which the Specter Firm would have been entitled to share in the attorneys' fees in the Litigation – did not occur.

Instead, the contracting parties' "justifiable expectations," of paramount importance in the context of a purported breach of contract, did not encompass a circumstance wherein more than a decade of Mr. Carlson's additional expenditure of effort and expense to advance the Litigation to settlement would result in four-fifths of the benefits of Mr. Carlson's additional efforts accruing to the Specter Firm. Northview Motors, Inc. 227 F.3d at 91. In fact, an interpretation of the contracts through the requisite lens of good faith confirms precisely the opposite.

Second, it is a "basic" legal principle that contracts must be read as a whole and "every portion thereof considered" when determining contractual intent and purpose. Haywood v. Univ. of Pittsburgh, 976 F. Supp. 2d 606, 640 (W.D. Pa. 2013), citing In re Alloy Mfg. Co. Emp. Trust, 192 A.2d 394, 396 (Pa. 1963). "Stated another way, the intention of parties to a written instrument is to be garnered from a reading of the entire writing and not from detached portions, it being necessary to consider every part thereof in order to resolve the meaning of a particular part as well as that of the whole." Id. at 640-41. The Specter Firm's purported contractual "interpretation" convolutes this "basic" requirement and wholly disregards the parties' expressed contractual intent. Id. Indeed, when Judge Lancaster's December 2003 Settlement Order was not affirmed on appeal, the Litigation was transformed from a matter for which settlement was very nearly concluded and for which attorneys' fees were quantifiable into a matter in an altogether different posture: one which "remain[ed] in active litigation" for 13 years and for which the "ultimate disposition … [was] uncertain." See Separation Agreement at 8. Under such circumstances and for such cases that were to "remain in active litigation" and for which an ultimate disposition was "uncertain," the Specter Firm's justifiable expectations are readily ascertainable and, indeed, are plainly and clearly stated within the four corners of the Separation Agreement. Id. For all such matters, including the Litigation, the Specter Firm contracted as

10

follows: "***SSEM [the Specter Firm] shall not be entitled to share in any fees generated by any of these cases***." Id. (emphasis added).  Thus, the "justifiable expectations" of the Specter Firm required by a good faith reading of the contract could not be more clearly articulated: the Specter Firm had *no expectation* that it would receive any attorneys' fees from Mr. Carlson if the 2003 Settlement Order in this Litigation was not affirmed on appeal.  See Northview Motors, Inc. 227 F.3d at 91.

Finally, the contracts, as written, simply do not contemplate the Spencer Firm's entitlement to any attorneys' fees.  Even if the Specter Firm could overcome the condition precedent necessary to receive payment – the affirmance of Judge Lancaster's December 2003 Settlement Order on appeal – the contracts are silent as to any payment owed to the Specter Firm in the 2016 settlement of the Litigation.  Indeed, in 2004, the Separation Agreement contemplated Mr. Carlson's and the Specter Firm's receipt of 50% of "approximately $7,400,000" of which the Specter Firm was to receive $2,705,000 and Mr. Carlson $995,000.  Id. However, as the Specter Firm's Complaint acknowledges, in 2017, Mr. Carlson *was not* awarded attorneys' fees of 50% of approximately $7,400,000 in the Arbitrators' Decision.  See Compl. ¶ 36.  Thus, the contracts do not speak to any division of the fees actually awarded to Mr. Carlson and, given this contractual silence, "principles of good faith fill the gap."  In re Kaplan, 143 F.3d 807, 818 (3d Cir. 1998) (internal quotation signal omitted).  Again, good faith – and the "justifiable expectations" of the Specter Firm – did not encompass a circumstance wherein more than a decade of Mr. Carlson's expenditure of effort and expense to advance the Litigation to settlement would result in four-fifths of the benefits of Mr. Carlson's additional efforts accruing to the Specter Firm.  Northview Motors, Inc. 227 F.3d at 91.

The Specter Firm's asserted "interpretation" of the 2004 Separation Agreement and the February 6, 2004 Agreement in an attempt to justify the firm's request for nearly $1.9 million of attorneys' fees to which it is not entitled thus exemplifies the type of "unreasonable conduct" prohibited by good faith.  See Fremont v. E.I. DuPont DeNemours & Co., 988 F. Supp. 870, 877 (E.D. Pa. 1997), citing Restatement (Second) of Contracts § 205 (holding that the duty of good faith "requires a party in a contractual relationship to refrain from . . . unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract").  This Court should not permit it: good faith, the plain language of the contractual documents, and the unsatisfied condition precedent do not permit the Specter Firm to recover attorneys' fees from Mr. Carlson.

## IV.     CONCLUSION

For all of the foregoing reasons, R. Bruce Carlson, Esquire's Motion to Confirm Costs and Attorneys' Fees Awarded to R. Bruce Carlson, Esquire should be granted in its entirety and this Court should enter an Order denying the claim of Specter Specter Evans & Manogue, P.C. as to any attorneys' fees or costs awarded to R. Bruce Carlson, Esquire in this Litigation.

**Burns White LLC**

/s/ David B. White
David B. White, Esquire
Pa. I.D. 36684; dbwhite@burnswhite.com
Lyle Washowich, Esquire
Pa. I.D. 84348; ldwashowich@burnswhite.com
Four Northshore Center
106 Isabella Street
Pittsburgh, PA 15212
412.995.3000
Counsel for R. Bruce Carlson, Esq.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 7th day of July, 2017 the foregoing Brief in Support of Motion to Confirm Costs and Attorneys' Fees Awarded to R. Bruce Carlson, Esquire has been electronically filed and served upon all counsel of record via the Court's ECF filing system.

        BURNS WHITE LLC

        /s/ David B. White
        David B. White, Esquire