IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

COMMUNITY BANK OF NORTHERN
VIRGINIA MORTGAGE LENDING
PRACTICES LITIGATION

MDL No. 1674
03cv0425 and 05cv0688

**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

Before the Court are two Motions: (1) a Motion to Confirm Costs and Attorneys' Fees Awarded to R. Bruce Carlson, Esquire, and Motion to Stay Pending State Court Litigation filed at ECF 781 by Attorney Carlson; and (2) a Motion to Vacate Orders (ECF 782 and [ECF 783](#)), filed by Attorney Stein at ECF 784.

**I. BACKGROUND**

Because the Court writes primarily for the Parties, the Court will not revisit the 14-year history of this case. Suffice it to say, that the Parties to this class action agreed to resolve their dispute in accordance with certain terms they set forth in a Final and Binding Settlement Agreement ("Settlement Agreement") dated August 8, 2016. The Settlement Agreement contained the following language relevant to the matters before the Court:

> The Parties have agreed to a class settlement, the value of which will be determined by a final and binding arbitration of all class claims and issues in MDL case no. 1674, Western District of Pennsylvania case numbers 03-cv-425 and 03-cv-1586.
>
> The arbitration will be conducted by three persons, chosen by Judge Arthur J. Schwab at his sole discretion, after consultation with counsel for the Parties. Counsel shall supply suggested names to Judge Schwab by no later than 5 p.m. on August 12, 2016.

> The arbitration will be conducted as a high-low ("baseball") arbitration. The Parties shall provide their respective number, which represents their total valuation of the case, including attorneys' fees and expenses, to Dan Sandman by no later than 5 p.m. on August 12, 2016.
>
> The three-person arbitration panel must make their ruling (i.e., selecting either the high or low number) by March 31, 2017. The Parties will evenly divide the fees and costs for the three-person panel. No written decision/opinion is required.
>
> In addition, the three-person arbitration panel will also determine attorneys' fees and expenses, which shall be paid solely from the selected number. The amount and allocation of the selected number among subclasses may be determined by the three- person panel. The selected number shall not be reduced by any other recoveries or settlements.

ECF 759-1. This Court approved the Settlement Agreement (ECF 759-1) along with the terms and procedures set forth therein, subject to further consideration at the Final Approval Hearing. ECF 762.

After Notice was provided to the Class (see ECF 761), the Court granted the Unopposed Motion for Preliminary Approval of the Class Action Settlement. ECF 759. In so doing, the Court honored the terms set forth the Parties' Settlement Agreement (ECF 759-1) and appointed a Three-Person Arbitration Panel[1] (ECF 758) to make their ruling as to the "high" or "low" amount submitted by the Parties and to "determine attorneys' fees and expenses, which [was to] be paid solely from the selected number." ECF 759-1.

After the Panel's appointment, but before the three Arbitration Panelists heard the case and determined the award, one Motion for Attorneys' Fees was filed. ECF 766 and [ECF 770](amended). The Court denied without prejudice, the [Amended] Motion for Attorneys' Fees (ECF 770), because the August 8, 2016 Agreement (ECF 759 -1) provided that the three-person

---

[1] The persons appointed to serve on the Arbitration Panel were former United States District Court Judge, Robert Cindrich, along with Art Stroyd, Esquire, and John Gaul, Esquire.

2

Arbitration Panel would also determine attorneys' fees and expenses. See Text Order at ECF 775.

The Arbitration Panel, after a comprehensive 13-day hearing, issued a "Unanimous Decision" on March 24, 2017. ECF 778. The Panel announced the amount to be awarded to the Plaintiff Class ($24,000,000.00). The Panel also decided the following with respect to Attorneys' fees:

> 5. From the Final Settlement Amount of $24,000,000 **and based on the representation by all Class Counsel that they have irrevocably agreed on an allocation of attorneys' fees and reimbursable expenses among themselves**, the undersigned Arbitrators unanimously approve the payment of attorneys' fees of 35% of the Final Settlement Amount (i.e., **the amount of $8,400,000**), less costs and expenses to the extent that they exceed $1,150,000, as set forth in paragraphs 6 and 7 below. **Such attorneys' fees** are fair, appropriate, adequate and reasonable and **are to be allocated among the various Class Counsel as they have previously agreed**. No fees, costs or expenses are approved or authorized except as described herein.

ECF 778, p. 4-5 (emphasis added).

Despite the representations made by "all Class Counsel" to the Arbitration Panel – upon which the Panel commented twice in a single paragraph (see above) – Attorney Carlson's prior law firm, Specter Specter Evans & Manogue ("SSEM"), now claims that it is entitled to a portion of the attorney fees to be paid out in this matter. SSEM relies upon its June 30, 2004, "Separation Agreement" with Attorney Carlson, and an earlier document dated February 6, 2004, entitled "Agreement," to substantiate its claim to a portion of Attorney Carlson's attorneys' fees to be paid in this case.

Simply put, Attorney Carlson, on his own behalf, and Attorney Carlson's former law firm, SSEM, disagree over the amount of attorneys' fees SSEM should receive. Attorney Carlson suggests that SSEM should receive nothing, while SSEM claims it is entitled to nearly

3

$1.9 million of the awarded attorneys' fees. SSEM, to this end, filed a Complaint in the Court of Common Pleas of Allegheny County seeking nearly $1.9 million of the $8.4 million in attorneys' fees which were awarded by the Arbitration Panel.   See Complaint (*Specter Specter Evans & Manogue, P.C. v. R. Bruce Carlson* pending in the Court of Common Pleas of Allegheny County, Pennsylvania at docket number GD-17-008330) filed at ECF 781-1, hereinafter "State Court action" or "State Court lawsuit."

Meanwhile, in this Court, Attorney Carlson filed a Motion and Brief in Support to conform costs and attorneys' fees awarded to Attorney Carlson, and to stay the State Court litigation initiated by SSEM.  See ECF 781 and ECF 787, respectively.  In his Motion and Brief, Attorney Carlson argued that this Court has ancillary jurisdiction over this fee dispute.  Id.

This Court granted Attorney Carlson's Motion to stay the State Court lawsuit, thereby suggesting it had ancillary jurisdiction.  ECF 782.  The Court will expand on that ruling in greater detail, below.

SSEM filed a Motion/Response to Attorney Carlson's Motion to Conform Fees (ECF 782) and a Motion to Vacate the Order of Court Asserting Ancillary Jurisdiction.  See ECF 789 (Response to Motion to Conform Fees); and ECF 784 and ECF 785 (Motion and Brief in Support to Vacate Order Asserting Ancillary Jurisdiction).   Attorney Carlson filed a Reply to the Motion/Response filed by Attorney Stein.  ECF 790.

These Motions are ripe for adjudication.

## II. Discussion

### A. Ancillary Jurisdiction

"[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978). The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. *See Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Where there is a series of claims based on the same facts, including at least one state and one federal claim, ancillary or pendent jurisdiction is necessary to avoid presenting the parties with the "Hobson's choice" of litigating the same facts twice or losing their right to a federal forum to decide the federal claims. *Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 988 (3d Cir. 1984).

To this end, this Court finds *Novinger v. E.I. DuPont de Nemours & Co., Inc.,* 809 F.2d 212 (3d Cir. 1987), particularly instructive. In *Novinger,* Kevin and Darlene Novinger commenced an underlying diversity products liability action in 1979, alleging that Kevin Novinger was poisoned during the course of his employment as an auto mechanic from exposure to paint manufactured by the defendant. The Novingers' underlying Complaint was filed in the United States District Court for the Eastern District of Pennsylvania[2] on their behalf by Steven M. Kramer, Esq.

After declining to sign two letter agreements with attorney Kramer wherein Kramer agreed to represent the Novingers on a 40% contingency fee basis, the Novingers signed a fee

---

[2] The Novingers' case was transferred to the United States District Court for the Middle District of Pennsylvania shortly thereafter.

5

agreement with Kramer for a 33 1/3% contingency fee.  In late April of 1979, the Novingers sent a "mailgram" to Kramer on July 21, 1980, discharging him as their attorney.  Kramer contended that prior to his "discharge," he retained Charles Geffen, Esq. to assist him on the Novinger's case.  Kramer also claimed that he had expended substantial time and money on the case and that he had asserted an "attorneys' retaining lein" on the Novingers' case.

In December of 1980, two other attorneys, William Smith, Esq. and David Cole, Esq., entered their appearance on behalf of the Novingers.  The Novingers signed a fee agreement with Smith and Cole wherein it was indicated that "[u]nder no circumstances whatsoever are the names of any previous attorneys, law firms, individuals or prior counsel, such as, but not limited to those mentioned herein, to appear on any settlement check whatsoever."  809 F.2d at 214.

Despite Smith's and Cole's entry of appearance filed on the Novingers' behalf, Attorney Kramer refused to turn over the Novingers' file to Smith and Cole.  Ultimately, the District Court ordered that Kramer do so and noted that, "[a]t the conclusion of the case[,] the court will determine what expenses and attorneys' fees should be paid to Steven M. Kramer." *Id.*

As the case wore on, the relationship between the Novingers and the Smith-Cole duo went downhill, and Smith and Cole informed the District Court that they would not be withdrawing their appearance on behalf of the Novingers, but they would be "inactive" on the case.  The Court ordered the Novingers to obtain new counsel, and by November 2, 1984, the law firm of Angino & Rover was retained, and like its predecessors, executed a fee agreement with the Novingers.  Angino & Rover withdrew as the Novingers' counsel shortly thereafter.

In July of 1985, Attorney Allan Kanner entered his appearance on behalf of the Novingers, and after extended motions' practice, he tried this case representing the Novingers.

Several days into the trial (in February of 1986), the case settled. It was then that the Novingers' attorneys' fees disputes arose.

The Novingers tried to convince the District Court that the attorney fee motions should be denied arguing a lack of subject matter jurisdiction. The District Court disagreed. On appeal, the United States Court of Appeals for the Third Circuit also disagreed with the Novingers, holding that the District Court correctly asserted ancillary jurisdiction over the attorney fee dispute.

Although the Court of Appeals acknowledged that "[a]ttorneys' fee arrangements in diversity cases, and in most federal question cases as well, are matters primarily of state contract law" the Court determined that "the federal forum has a vital interest in those arrangements because they bear directly upon the ability of the court to dispose of cases before it in a fair manner." *Id.* at 218.

Turning to the instant matter, SSEM claims that its State Court lawsuit should not have been stayed by this Court because its breach of contract claim for its share of attorneys' fees is not ancillary to the case which incepted in United States District Court for the Western District of Pennsylvania in 2003 – namely, *In re: Community Bank of Northern Virginia*. See ECF 785. This Court disagrees.

The Court of Appeals in *Novinger,* based its legal decision around a central, key concept: "Ancillary jurisdiction exists because without it the federal court neither could dispose of the principal case effectively nor do complete justice in the dispute that is before the tribunal." *Id.*, at 217, *quoting* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3523, at 85 (1984) (footnote omitted). Given the tortured history of the instant 14-year old case, nothing could be more true.

### 1. Case History

Because this 14-year old case has been before the United States Court of Appeals for the Third Circuit, on three occasions, this Court has paraphrased much of the following case history from two of the Court of Appeals' prior Opinions. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 279 (3d Cir. 2010) ("*Community Bank II*") (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) ("*Community Bank I*")).

Plaintiffs in this class action alleged that Defendants' issuance of second mortgages violated, *inter alia*, the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, et seq. ("RESPA"), the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., as amended by the Home Ownerships Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 et seq. and the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. ("RICO"). This class action involved the alleged predatory lending scheme of the Shumway/Bapst Organization, a residential mortgage loan business involved in facilitating the making of high-interest, mortgage-backed loans to debt-laden homeowners.

Shumway [was] not a depository lender – and thus not subject to fee caps and interest ceilings under various state laws – it allegedly formed relationships with defendant Community Bank of Northern Virginia ("CBNV") to circumvent these restrictions. CBNV's association with Shumway purportedly enabled Shumway to conceal the origin of the loans, thus creating the appearance that fees were paid solely to a depository institution when, in reality, the large majority of the fees and other charges associated with the loans were funneled to Shumway. CBNV was acquired by Mercantile Bankshares Corp. in 2005. Mercantile is now owned by PNC Bank, N.A. ("PNC"). PNC is the successor to CBNV, through its acquisition of Mercantile.

This case began as a number of civil actions filed in this Court and throughout the United States. The Judicial Panel on Multidistrict Litigation ("MDL Panel") created MDL No. 1674 and transferred the actions that originated elsewhere to this Court. *In re Cmty. Bank of N. Va. Mortgage Lending Practices Litig.*, 368 F. Supp. 2d 1 354 (J.P.M.L. 2005). There is no reason to set forth the long procedural history of this case. Suffice it to say that some Plaintiffs and Defendants agreed to settle this case on a class-wide basis first, in 2003, and then again, in 2008. This Court (through Opinions and Orders entered by the late Chief Judge Lancaster) certified the class and preliminarily approved those settlements after extensive analysis. After each preliminary approval, this Court directed the parties to provide notice to the class. The class was informed of the certification and the proposed settlement, twice. After allowing time for class members to either opt out of the class or object to the terms of the settlements both times, this Court finally approved the settlements and entered final judgments. The Court of Appeals for the Third Circuit reversed twice, based upon the objections of some class members. These class members objected to the certifications and settlements solely on the basis of the named Representatives' purported inadequacy under Fed.R.Civ.P. 23(a)(4).

On remand after the second appeal, Plaintiffs and the former Objectors joined forces to file all of their potential claims against all Defendants by filing a Joint Consolidated Amended Complaint. ECF 507. In doing so, Plaintiffs followed the guidance provided by the Court of Appeals in *Community I* and *Community II*, and jointly asserted claims pursuant to TILA, as amended by HOEPA, and RICO. Plaintiffs also reasserted their Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., claims.

Motions to Dismiss the Joint Consolidated Amended Complaint were filed and on June 27, 2013, this Court entered an Order: (1) granting Defendant FDIC's Motion to Dismiss for

Lack of Subject Matter Jurisdiction (ECF 516); and (2) granting in part and denying in part Defendant PNC's Motion to Dismiss for Failure to State a Claim (ECF 520).

Subsequently, on July 31, 2013, this Court granted Plaintiffs' Motion for Class Certification, ordering that a certain general class and several subclasses be certified. ECF 618. This Order was appealed to the Court of Appeals and was affirmed on July 29, 2015. ECF 690.

Once the Mandate was issued, this Court resumed proceedings in this matter, and on October 27, 2015, issued a second Case Management Order which included dates pertaining to expert discovery deadlines and summary judgment motions practice. ECF 700.

Through the first part of 2016, the Parties briefed their respective positions with respect to summary judgment. In June of 2016, this Court appointed a mediator and ordered the Parties to attend a two-day mediation. ECF 744 and ECF 745. At the request of the Parties, the Court agreed to assist the mediator with the mediation and to extend the time for expert witness discovery. ECF 753 and ECF 754. Although the mediation did not resolve this case in its entirety, the Parties emerged from the mediation on August 8, 2016, with an agreement on a process by which the Parties could fully resolve this matter. ECF 759-1. This resulted in the Court entering an Order appointing a three-person panel to conduct a high/low arbitration in accordance with their Agreement. ECF 758.

As noted above, this three-person panel conducted a 13-day hearing and issued a unanimous decision on March 24, 2017, awarding $24,000,000.00 to the Plaintiffs. ECF 778. Additionally, as noted above, the Arbitration Panel awarded $8,400,000.00 in class counsel attorneys' fees.

## 2. SSEM's Position in its Motion to Vacate (ECF 782 and ECF 783) and its Response to Motion to Conform Fees (ECF 789)

SSEM contends that ancillary jurisdiction is inappropriate because the "state court proceedings . . . ha[ve] absolutely nothing whatsoever to do with the settlement of[,] or legal fees awarded in this class action. . . ." ECF 785, p. 1. However, given this Court's participation (which began in May of 2013), and this Court's in-depth involvement with the Parties and their mediator which led to the Agreement (ECF 759-1) on a method by which this case could be settled (after 14 years of prolonged litigation), by a panel of three of arbitrators using a baseball arbitration technique, the Court firmly disagrees with SSEM's position.

First, the Court notes that at no time was an SSEM representative or lawyer present during any of the mediation sessions which took place in August of 2016. At no time during the negotiation of the Agreement which evolved during the Mediation and led to the baseball arbitration method of settlement was counsel for, or a representative lawyer from, SSEM present. See ECF 759-1. At no time during the 13-day arbitration was anyone representing SSEM present. Thus, the Mediator, this Court, and the Arbitration Panel were not aware of the claim that SSEM has now attempted to assert in a Pennsylvania state court.

Second, the Agreement which the Parties' counsel signed on August 8, 2016, broadly indicated that the value of the class settlement would be chosen from two different numbers – one submitted by the counsel for the Defendant, and one submitted by counsel for the Plaintiffs – by a Panel of three Arbitrators. ECF 759-1. The Agreement also indicated that the value each Party submitted to the Panel would represent that Party's total valuation of the case, inclusive of attorneys' fees and expenses. Id. Thus, attorneys' fees and expenses were a key component for the Arbitrators to consider (in addition to the claims before them), when assigning the final total value of the settlement.

Third, the Notice that was sent to the Plaintiff class and sub-class members discussed the potential settlement amounts and how the attorneys' fees and costs would be paid from the settlement proceeds. Notably, the Court-approved Notice stated:

> **17. Do I have a lawyer in this case?**
>
> Yes. The Court appointed: (1) R. Bruce Carlson and the law firm Carlson Lynch Sweet Kilpela & Carpenter, LLP, and (2) R. Frederick Walters and the law firm Walters Bender Strohbehn & Vaughan, P.C., as Co-Lead Counsel for the CBNV General Class and Sub-Classes ("Class Counsel"). You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.
>
> **18. How will these lawyers be paid?**
>
> Class Counsel will seek the payment of litigation expenses and court costs incurred by Class Counsel from the CBNV General Class recovery, in an amount not to exceed $450,000.00 for known expenses as of September 7, 2016, plus additional unknown expenses which will be incurred between September 7, 2016 and the final distribution of the settlement funds. These litigation expenses and court costs shall be awarded from the amount awarded in the ADR procedure, *i.e.,* either the $24 million or $70 million awarded by the Panel. . . . Class Counsel will seek the payment of attorneys' fees not to exceed thirty-five percent (35%) of the final settlement amount for the CBNV General Class. Such fees pay Class Counsel for time spent investigating the facts, litigating the case, and negotiating the settlement. This case has been litigated for 15-plus years, including three appeals. In addition, Class Counsel will ask for incentive awards of $3,750 to be paid to each of the 13 Named Plaintiffs in the MDL Litigation for their services as Class Representatives. Pursuant to the Settlement Agreement, the expenses, attorneys' fees, and incentive awards are to be determined by the Panel.

ECF 761. The "Class Counsel" – Bruce Carlson from the law firm of Carlson Lynch Sweet & Kilpela LLP, and Fred Walters from the law firm of Walters, Bender, Strohbehn & Vaughan –

were also signatories to the Settlement Agreement.³ When the unanimous decision of the Arbitrators was announced in March of 2017, the Panel wrote the following:

> 5. From the Final Settlement Amount of $24,000,000 **and based on the representation by all Class Counsel that they have irrevocably agreed on an allocation of attorneys' fees and reimbursable expenses among themselves**, the undersigned Arbitrators unanimously approve the payment of attorneys' fees of 35% of the Final Settlement Amount (i.e., **the amount of $8,400,000**), less costs and expenses to the extent that they exceed $1,150,000, as set forth in paragraphs 6 and 7 below. **Such attorneys' fees** are fair, appropriate, adequate and reasonable and **are to be allocated among the various Class Counsel as they have previously agreed**. No fees, costs or expenses are approved or authorized except as described herein.

ECF 778, p. 4-5 (emphasis added).

This Court now finds that the utter lack of attendance on the part of any representative of SSEM, the Court's own experience with the Parties' counsel during the complex negotiations which ultimately led to the Settlement Agreement (ECF 759-1) and the Court-approved Notice (ECF 761), and the statements contained in paragraph 5 of the decision (see above) of the Arbitration Panel (ECF 778), that the payment of attorneys' fees were (and are) inextricably intertwined with the final resolution of this 14-year old lawsuit. This Court, the Parties, and their counsel have a vital interest in the arrangements insofar as the payment of attorneys' fees is concerned given not only the lengthy history of this case, but to preserve the integrity of the various legal processes (mediation, court intervention/involvement, and final and binding arbitration) that brought about a hard-fought and creative resolution to this matter.

Based on all of the foregoing, this Court accordingly finds it has ancillary jurisdiction over the attorney fee dispute in this matter.

---

³ Robert S. Wood, Esq., from the law firm of Richardson, Patrick, Westbrook & Brickman, LLC, was also a signatory for Plaintiffs on the Settlement Agreement and played an integral role in the negotiation of the Settlement Agreement which led to the arbitration. However, Mr. Wood and his firm were not designated "Class Counsel" in the Notice. Compare, ECF 759-1 and ECF 761.

### B. Attorneys' Fee Dispute

This Court has before it a Motion filed by Attorney Carlson to "Confirm Costs and Attorneys' Fees Awarded to Bruce Carlson, Esquire" ([ECF 787](#)), a Response by SSEM to that Motion ([ECF 789](#)), and a Reply by Carlson to the SSEM Response ([ECF 790](#)). These three briefs comingle arguments concerning ancillary jurisdiction, and two agreements that SSEM and Carlson entered into prior to this Court's handling of the instant lawsuit and Settlement Agreement.

#### 1. Pennsylvania Law

"[A] condition precedent – often referred to simply as a condition – is generally 'an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due.'" *Pac. Emp'r Ins. Co. v. Global Rein. Corp. of Am.*, 693 F.3d 417, 430 n.6 (3d Cir. 2012), *quoting* Restatement (Second) of Contracts § 224. If a condition precedent remains unfulfilled, "the contract lays dormant and no damages are due for non-performance." *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999); *see also, Keystone Tech. Grp., Inc. v. Kerr Grp., Inc.*, 824 A.2d 1223, 1227-28 (Pa. Super. Ct. 2003) ("[I]t is well settled that if a contract contains a condition precedent, the condition precedent must occur before a duty to perform under the contract arises.").

#### 2. The February 6, 2004 "Agreement"

This Agreement, which relates solely and specifically to the instant federal case, was executed by Attorney Carlson and SSEM. This Agreement reads (in its entirety) as follows:

> This document is intended to confirm the fee arrangement between Bruce Carlson and Specter Specter Evans & Manogue (hereinafter "SSEM") regarding *In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation*, 03-425

> (W.D.Pa.)(Lancaster, J). The court has entered a final Order approving the settlement in this case and has approved total counsel fees in the amount of $8, 100,000. This Order is currently on appeal. Regarding the portion of this fee that is ultimately paid to Bruce Carlson and/or SSEM, assuming the district court's Order is affirmed on appeal, Carlson shall be entitled to 20% of the first $2,000,000 and 35% of all amounts in excess of $2,000,000.

ECF 784-1, p. 60.

Based on the plain reading of this Agreement, the Court finds the phrase, "assuming the district court's Order is affirmed on appeal . . ." to be a condition precedent. The history of this case readily shows that on August 11, 2005, the United States Court of Appeals for the Third Circuit did not affirm the district court's Order; to the contrary the August 11, 2005 Court of Appeals Order was vacated and the matter was remanded back to the late Chief Judge Lancaster (see ECF 129 and ECF 131), and it continued to be litigated for an additional 12 years. Therefore, because the prerequisite (*i.e.*, an affirmation from the Court of Appeals for the Third Circuit) was not met, Attorney Carlson is excused from his performance of his obligation(s) under terms set forth in the February 6, 2004 contract.

### 3. The June 30, 2004 "Separation Agreement"

Subsequent to the February 6, 2004 Agreement, Attorney Carlson and SSEM entered into another agreement which set forth a fee sharing arrangement with respect to the instant matter. In the June 30, 2004 agreement Carlson and SSEM agreed (in relevant part) as follows:

> 16. The parties have previously negotiated fee sharing agreements regarding matters originated by CARLSON, including agreements with Gary F. Lynch, P.C. regarding fee arrangements with that firm (See Attachment 1). The parties agree that CARLSON shall be entitled to the following percentages of all fees payable to SSEM and/ or CARLSON:
>
> **GMAC:** SSEM and/ or CARLSON are entitled to fifty-percent (50%) of the $8.1 million fee approved in this case (after payment to objectors). . . .

Again, like the February 6, 2004 Agreement, this Court finds that the "approval of the $8.1 million fee" was a condition precedent. Thus, because the Court of Appeals for the Third Circuit in its 2005 decision did not approve "the $8.1 million fee," Attorney Carlson is excused from his performance of his obligation(s) under terms set forth in this June 30, 2004 contract.

### III. Conclusion

The Court finds that neither of the two agreements between Carlson and SSEM obligates Carlson to perform. Accordingly, the Court will grant the Motion to Confirm Costs and Attorneys' Fees ([ECF 787](ECF 787)). An appropriate Order will follow.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All ECF Registered Counsel of Record