UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA MORTGAGE LENDING PRACTICES LITIGATION, <br><br> THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1674 <br><br> Civil Action Nos. 03-CV-0425, 05-CV-0688 <br><br> Hon. Arthur J. Schwab |

## <u>MOTION TO INTERVENE AND TO UNSEAL DOCUMENTS</u>

For the reasons set forth in the accompanying Memorandum of Law, undersigned

proposed intervenors[1] ("Movants") seek to intervene for the limited purpose of requesting that

certain documents filed in this case be unsealed.

Dated: February 16, 2021

Respectfully submitted,

HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER

By: */s/ Ronald P. Schiller*
　　Ronald P. Schiller (PA No. 41357)
　　Sharon F. McKee (PA 81499)
One Logan Square, 27th Square
Philadelphia, Pennsylvania 19103
(215) 568-6200 (telephone)
(215) 568-0300 (facsimile)
rschiller@hangley.com
smckee@hangley.com

*Attorneys for Movant Steadfast Insurance Company*

OF COUNSEL:

STEPTOE & JOHNSON LLP
Harry Lee, Esq.

KAUFMAN DOLOWICH & VOLUCK, LLP
Patrick M. Kennell, Esq.

---

[1] Certain Underwriters at Lloyd's of London, Twin City Fire Insurance Company, Continental Casualty Company, Clarendon National Insurance Company, Swiss Re International SE, Steadfast Insurance Company, St. Paul Mercury Insurance Company, and North American Specialty Insurance Company.

John O'Connor, Esq.
Alexandra R. Galdos, Esq.
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-8112 (Telephone)
(202) 429-3902 (Facsimile)
hlee@steptoe.com
joconnor@steptoe.com
agaldos@steptoe.com

*Attorneys for Defendant Clarendon National Insurance Company*

ROBINSON & COLE LLP
Lawrence Klein, Esq.
J. Gregory Lahr, Esq.
Soo Y. Kim, Esq.
Chrysler East Building
666 Third Avenue, 20th floor
New York, NY 10017
(212) 451-2933 (Telephone)
(212) 451-2999 (Facsimile)
lklein@rc.com
glahr@rc.com
skim@rc.com

*Attorneys for Certain Interested Underwriters at Lloyd's, London*

WILEY REIN LLP
Cara Tseng Duffield, Esq.
Karen Toto, Esq.
1776 K Street NW
Washington, DC 20006
(202) 719-7000 (Telephone)
(202) 719-7049 (Facsimile)
cduffield@wileyrein.com
ktoto@wileyrein.com

*Attorneys for Defendant Twin City Fire Insurance Company*

CAHILL GORDON & REINDEL LLP
Thorn Rosenthal, Esq.
Samuel G. Mann, Esq.

Kevin M. Mattessich, Esq.
60 Broad Street – 36th Floor
New York, New York 10038
(212) 458-9600 (Telephone)
(212) 485-9700 (Facsimile)
pkennell@kdvlaw.com
kmattessich@kdvlaw.com

*Attorneys for Defendant Continental Casualty Company*

ARNOLD & PORTER, KAYE SCHOLER LLP
Kent A. Yalowitz, Esq.
Daniel Bernstein, Esq.
250 West 55th Street
New York, New York  10019
(212) 836-8000 (Telephone)
(212) 836-8689 (Facsimile)
kent.yalowitz@arnoldporter.com
daniel.bernstein@arnoldporter.com

*Attorneys for Defendant North American Specialty Insurance Company*

KAUFMAN BORGEEST & RYAN LLP
Scott A. Schechter, Esq.
Paul T. Curley, Esq.
Patrick Stoltz, Esq.
Matthew E. Mawby, Esq.
200 Summit Lake Drive, 1st Floor
Valhalla, New York 10595
(914) 449-1000 (Telephone)
(914) 449-1100 (Facsimile)
sschechter@kbrlaw.com
pcurley@kbrlaw.com
pstoltz@kbrlaw.com
mmawby@kbrlaw.com

*Attorneys for Defendant St. Paul Mercury Insurance Company*

2

Tamara M. O'Flaherty, Esq.
80 Pine Street
New York, New York 10005
212-701-3000 (Telephone)
212-269-5420 (Facsimile)
trosenthal@cahill.com
smann@cahill.com
toflaherty@cahill.com

*Attorneys for Defendant Swiss Re*
*International S.E. (formerly known as SR*
*International Business Insurance Company*
*Ltd.*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTH-ERN VIRGINIA MORTGAGE LENDING PRACTICES LITIGATION,<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1674<br><br>Civil Action Nos. 03-CV-0425, 05-CV-0688<br><br>Hon. Arthur J. Schwab |

## <u>MOTION TO INTERVENE AND TO UNSEAL DOCUMENTS</u>

### INTRODUCTION

The undersigned proposed intervenors[1] ("Movants") seek to intervene for the limited purpose of requesting that certain documents filed in this case be unsealed.

Movants are insurance companies being sued by Plaintiffs in this case and the successor-in-interest to former Defendant Residential Funding Corporation ("RFC") over insurance coverage for a settlement of claims originally asserted in this case (the "Coverage Litigation"). The Coverage Litigation is pending in the United States District Court for the Southern District of New York. It is currently on reference to the Bankruptcy Court for non-dispositive proceedings.

By this motion, Movants seek:

- Tabs 33–45 and 56 of the Appendix to Defendant PNC's Motion for Summary Judgment and Decertification of Class (ECF No. 722);

- Plaintiffs' Response to the Motion for Summary Judgment's Statement of Material Facts (ECF No. 727), and

---

[1] Certain Underwriters at Lloyd's of London, Twin City Fire Insurance Company, Continental Casualty Company, Clarendon National Insurance Company, Swiss Re International SE, Steadfast Insurance Company, St. Paul Mercury Insurance Company, and North American Specialty Insurance Company.

- Tabs 69, 73, 143, and 162 of the Appendix to Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment and Decertification of Class (ECF No. 733).

- All documents submitted to the arbitration panel that set the value of the settlement of this case in connection with the Court's final approval of settlement.

Documents on which a court relies are judicial records. As such, they are subject to the common law right of access to public records.

Plaintiffs and Defendant PNC Bank (the "Parties") cannot rebut the strong presumption in favor of access here, for at least two reasons. First, the documents were sealed under a standard that does not comport with current Third Circuit law on judicial documents. Second, the assertion of confidentiality is too vague and too broad to satisfy the common law right to access public records. The Court therefore should grant the motion to unseal the requested portions of the record in this case.

## BACKGROUND

### A.    The Dispute

RFC was in the business of buying mortgage loans and securitizing them by issuing residential mortgage-backed securities. *See In re Residential Capital, LLC*, No. 15-cv-2712 (JPO), 2015 WL 9302834, at *1 (S.D.N.Y. Dec. 21, 2015). Beginning in 2001, Plaintiffs sued RFC and other defendants under federal statutes regulating the mortgage-closing process. *See In re Cmty. Bank of N. Va. (Community Bank I)*, 418 F.3d 277, 283–85 (3d Cir. 2005). Plaintiffs had taken out second-mortgage loans from two banks that allegedly violated these statutes. *See id*. RFC, which was named as a defendant, had purchased the loans from the two banks to securitize them, and federal statutes imposed secondary liability on some such purchases. *See id.*

### B.    Initial Settlement Attempts

There were multiple attempts to settle this case. The first settlement—for up to $33 million

jointly from RFC and the predecessor of defendant PNC Bank, N.A. ("PNC")—received the approval of this Court, but the Third Circuit remanded for the Court to address an intra-class conflict. *See Cmty. Bank I*, 418 F.3d 277 (3d Cir. 2005). This Court then approved a second settlement, for up to $48 million jointly from RFC and PNC, but in 2010, the Third Circuit "reluctantly" reversed because of a procedural error by this Court in considering the settlement. *In re Cmty. Bank of N. Va. (Community Bank II)*, 622 F.3d 275 (3d Cir. 2010). These settlements were claims-made settlements, meaning that the plaintiffs who made claims would receive a fixed payout and the defendants would retain any unclaimed settlement funds. Settlement Agreement and Release ¶ 4(p) (July 11, 2003). So the real cost to Defendants would have been less than $33 million for the first settlement and less than $48 million for the second.

### C.    The ResCap Bankruptcy

In May 2012, RFC filed a voluntary petition for reorganization, along with fifty affiliates, following losses suffered in home-mortgage business in the wake of the housing-market crash. *See In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y.). The present case was stayed as to RFC. *See* Notice of Bankruptcy (May 15, 2012), ECF No. 564.

### D.    Continued Litigation and Settlement

Although this case was stayed as to RFC, it continued as to the other defendants. On June 12, 2013, this Court granted in part and denied in part PNC's motion to dismiss. *See* Order Granting in Part and Denying in Part Mot. to Dismiss (June 12, 2013), ECF No. 605. On July 31, 2013, this Court granted Plaintiffs' motion for class certification, after which discovery commenced. *See* Order Granting Class Certification (July 31, 2013), ECF No. 618; Joint Discovery Order (Sept. 10, 2013), ECF No. 627.

On April 22, 2016, PNC filed motions for summary judgment and class decertification. *See* Mot. for Summary Judgment (Apr. 22, 2016), ECF No. 711; Mot. to Decertify Class (Apr. 22,

2016), ECF No. 714.  "[B]oth Motions rel[ied] on subsets of the same documents and depositions," filed in a single appendix.  Mot. to Decertify Class at 1.

Also on April 22, 2016, the Parties also filed a Stipulation to place under seal certain documents being filed in support of PNC's motion for summary judgment.  *See* Joint Stipulation to File Portions of App. Under Seal (Apr. 22, 2016), ECF No. 721.  According to the Parties, these items included "charts summarizing data contained in or derived from the available loan files for the 26,000 class members, the remaining named Plaintiffs' loan files, and deposition transcripts of the name Plaintiffs."  *Id.* at 1.  The Parties argued that sealing was appropriate to protect the privacy interests of the Plaintiffs.  *See id.* at 2–3.  This sealing request also covered deposition transcripts and expert reports, which, the Parties argued, needed to be sealed to prevent "the potential inadvertent disclosure of any personally identifying or other sensitive information that may have been discussed or referred to in the deposition transcripts taken in the case."  *Id.* at 2.

The Court granted the Parties' Stipulation, without any explanation of its reasoning.  *See* Order Granting Joint Stipulation to File Portions of App. Under Seal (Apr. 25, 2016), ECF No. 721 (stating simply that the order was granted "upon consideration of the Parties' Stipulation").  *Id.* at 1.

Both Parties then filed numerous exhibits under seal, including the Named Plaintiffs' depositions, Class Plaintiffs' response to PNC's statement of material facts connected to its motion for summary judgment, and a number of expert reports.  *See* Index of App. Docs. at 3–5 (Apr. 22, 2016), ECF No. 718; Resp. to Mot. for Summary Judgment Statement of Material Facts (May 13, 2016), ECF No. 727; App. to Mem. in Opp'n to Mot. for Summary Judgment and to Decertify Class at 2, 8, 10 (May 13, 2016), ECF No. 733.  Those documents remain under seal.

After the motions for summary judgment and class decertification were fully briefed, Plaintiffs and PNC settled this case—subject, of course, to this Court's approval. See Fed. R. Civ. P. 23(e) (certified class action "may be settled, voluntarily dismissed, or compromised only with the court's approval"). The settlement required each of Plaintiffs and PNC to make a submission to a panel of arbitrators in a baseball-style arbitration.  *See* Order Appointing Three-Person Panel at 1 (Aug. 19, 2016), ECF No. 758. As a "baseball" arbitration, each side had to submit the figure that it thought was the most fair and reasonable valuation of Plaintiffs' claims. The Arbitration Panel would select one of the two figures; which would then form the consideration in the final settlement. *See* Memo. in Supp. of Unopposed Preliminary Approval at 3 (Sept. 7, 2016), ECF No. 760.

Plaintiffs submitted a total valuation of $70 million and PNC submitted a valuation of $24 million.  *See id*.  The arbitrators chose the $24 million figure.  *See* Unanimous Decision of Arbitrators at 2 (Mar. 24, 2017), ECF No. 778. This Court then incorporated this amount into the approved settlement with PNC. The Court could not have done so without finding that it was "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2)(C).

### E.    The RFC Settlement

Meanwhile, in the ResCap bankruptcy, Plaintiffs filed a collective proof of claim in the bankruptcy proceedings. They also moved for class certification.

On June 27, 2013, RFC and Plaintiffs executed a settlement agreement (subject to approval of the Bankruptcy Court and confirmation of a plan of reorganization). Under the bankruptcy settlement, RFC would pay Plaintiffs in cash, up to $56.7 million, from a specially created "borrowers trust" and assign Plaintiffs certain rights under its insurance policies. RFC also granted Plaintiffs a so-called "allowed claim" of $300 million—but only on the condition that this notional figure

would not lead to *any* additional consideration from the RFC bankruptcy estate to the Plaintiffs. Plaintiffs could, however, claim that they had a "$300 million" settlement and sue the insurance companies for that amount. *See* Kessler Settlement Agreement, *In re Residential Capital, LLC*, No. 12-12020 (July 31, 2013), ECF No. 4451-5; Memorandum of Decision at 6, 20–21, *Drennan v. Certain Underwriters at Lloyd's of London*, No. 15-1025 (Oct. 21, 2016), ECF No. 291.

### F.    The Coverage Action and Prior Proceedings

In February 2015, Plaintiffs sued the insurance companies in a case jointly filed with RFC's Liquidating Trust, seeking $300 million for themselves. The case remains pending in the Southern District of New York, currently on reference to the bankruptcy court, where discovery is proceeding. *See In re Residential Capital, LLC*, No. 15-cv-2712 (JPO), 2015 WL 9302834, at *1 (S.D.N.Y. Dec. 21, 2015).

## STANDARD OF REVIEW

I.    Permissive intervention "is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772,777 (3d Cir. 1994).  Permissive intervention is governed by Federal Rule of Civil Procedure 24(b)(1)(B), which provides that, upon a timely motion, a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B). When a third party intervenes solely to litigate a collateral issue, such as whether a sealing order should be vacated, the potential prejudice to the original parties due to any delay is minimized. *See Pansy*, 23 F.3d at 780.

II.    Although documents and information exchanged in discovery may be produced subject to an order requiring parties to maintain confidentiality for good cause shown under a

multi-factor test, *see Pansy*, 23 F.3d 772, 787–90 (3d Cir. 1994); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 670 (3d Cir. 2019), courts "apply the more rigorous common law right of access when discovery materials are filed as court documents," *In re Avandia*, 924 F.3d at 670; *see Penn. Nat'l Mut. Cas. Ins. Co. v. New England Reinsurance Corp.*, 794 F. App'x 213, 216 (3d Cir. 2019) (vacating an order denying a motion to unseal because the district court erroneously applied the *Pansy* factors to a request to unseal judicial records).

Whether the common law right of access applies to a document "turns on whether that item is considered to be a 'judicial record.'" *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). "The status of a document as a "judicial record," in turn, depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* "While filing clearly establishes such status, a document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal." *Id.*

"[T]he public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access." *Id.* at 670. The "strong presumption of openness does not permit the routine closing of judicial records to the public." *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation omitted). Accordingly, the party opposing access must rebut the presumption by showing that "the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (internal quotation omitted).

"To overcome that strong presumption, a district court must articulate 'the compelling, countervailing interests to be protected,' make 'specific findings on the record concerning the effects of disclosure,' and 'provide[ ] an opportunity for interested third parties to be heard.'" *In*

7

re Avandia, 924 F.3d at 672–73 (quoting *In re Cendant*, 260 F.3d at 194) (emphasis omitted).  "In delineating the injury to be prevented, specificity is essential."  *In re Cendant*, 260 F.3d at 194. "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.*  "[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir.1993).  A district court must conduct a review of the documents' contents on a document-by-document basis.  *In re Avandia*, 924 F.3d at 673.

## ARGUMENT

### I.      Movants Meet the Standard for Intervention

Movants meet the requirement of Rule 24 because they seek to challenge the order sealing documents of record in the case. *See Pansy*, 23 F.3d at 777 ("[T]he procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action.").  Furthermore, the timing of this motion cannot be said to pose any prejudice to the Parties—nor delay any part of this action— because the Parties have long since settled.  *See Pansy*, 23 F.3d at 779; *Leucadia*, 998 F.2d at 161 n.5.  Thus, the standard set forth in Rule 24 is met under Third Circuit precedent, and Movants should be permitted to intervene for the purpose of unsealing its requested documents.

### II.     The Documents Should Be Unsealed

#### A.      The Documents Are Judicial Records

What constitutes a "judicial record" hinges on "whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant,* 260 F.3d at 192.

It is beyond dispute that documents filed with the court for the purpose of seeking or opposing summary judgment are judicial records. *See Avandia*, 924 F.3d at 675.

In addition, the documents submitted to the "arbitration panel" meet the standard for judicial documents because they were "somehow incorporated or integrated into [this] court's adjudicatory proceedings." *Cendant*, 260 F.3d at 192. It is well established that "'the court's approval of a settlement or action on a motion are matters which the public has the right to know about and evaluate.'" *LEAP Sys., Inc. v. MoneyTrax, Inc*., 638 F.3d 216, 220 (3d Cir. 2011) (quoting *Bank of Am. & Nat'l Trust v. Hotel Rittenhouse Assocs.,* 800 F.2d 339, 344 (3d Cir.1986)). In addition, documents submitted to an appointee functioning as an "adjunct of the Court," such as a special master, are "incorporated and integrated in the Court's adjudicatory process." *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, No. 2:10-cv-01609-JFC, 2019 WL 3778090, at *9 (W.D. Pa. May 31, 2019) (Special Master) (alterations omitted), *objections denied in relevant part*, 2020 WL 337522 (W.D. Pa. Jan. 21, 2020).

Here, the "arbitration panel" was selected and appointed by the court pursuant to a class-action settlement agreement for the purpose of determining a fair and reasonable amount of settlement consideration—an amount that would be subject to all the protections and standards of Rule 23(e) including class notice and a fairness hearing. *See* Order Appointing Three-Person Panel at 1 (Aug. 19, 2016), ECF No. 758. Although this process was unconventional, there is no doubt that the arbitrators were performing a judicial function—the arbitrators functioned not as creatures of contract, but at all times under the auspices of and subject to the supervision of the United States District Court for the Western District of Pennsylvania. They were judicial "adjuncts" performing a judicial function for the ultimate purpose of court approval of a class-action settlement. As such,

documents submitted to the arbitrators were a matter of substantial public interest—indeed they were germane to resolving a dispute over which millions of dollars would turn.

It would be quite shocking if parties to a class action could avoid the common-law and First Amendment protections accorded to judicial proceedings by agreeing that a United States District Judge would appoint adjuncts—whether they be former judges, law clerks, or members of the bar—and have those adjuncts consider the parties' submissions in secret for a "binding" judicial determination. Secrecy in such a process would turn an Article III Judge into a cat's paw for private litigants—a mere functionary rather than a judicial officer. That would be improper in any case, but doubly improper in a case where the rights of thousands of absent class members are determined with judicial supervision for the protection of the public.

The Third Circuit's decision in *Cendant* is instructive. There, the Third Circuit unsealed bidding documents that were submitted to the district court as part of an "auction process" for the selection of lead counsel in a securities class action. Following an *in camera* hearing, the district court appointed counsel. The Third Circuit held that "the bids were judicial documents subject to the common law right to access." 260 F.3d at 193. Would a different outcome have resulted if the Court had appointed a Special Master to evaluate the bids? Or an "arbitration panel"?

### B.    The Parties Applied the Wrong Standard

The Parties were obligated to show "the material [was] the kind of information that courts will protect and that disclosure [would] work a clearly defined and serious injury to the party seeking disclosure." *Miller*, 16 F.3d at 551 (internal quotation omitted).  However, the Parties' Stipulation focused entirely on the *Pansy* factors and its lower burden for sealing documents. *See id* at 671–72, 675.; Joint Stipulation to File Portions of App. Under Seal at 2–3.  This was incorrect. "The *Pansy* factors are not a substitute for the common law right of access standard." *In re Avandia*, 824 F.3d at 677.  The *Pansy* factors not only are less stringent than the common law right

10

of access standard; some of them "are incompatible with [the Third Circuit's] case law on the common law right of access" standard. *Id.* at 676. For example, the *Pansy* factors consider "whether disclosure of the information will cause a party embarrassment." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). But the Third Circuit has "repeatedly said that concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of access." *In re Avandia*, 924 F.3d at 676 (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991)). The *Pansy* factors also consider "whether the information is being sought for a legitimate purpose or for an improper purpose." *Glenmede*, 56 F.3d at 483. But "a person's motive for inspecting or copying judicial records is irrelevant under the common law right of access" standard. *In re Avandia*, 924 F.3d at 677.

By filing documents in connection with a motion for summary judgment and a motion for approval of a class action settlement, the Parties made those documents judicial records and thus were required to overcome the "strong presumption" in favor of public access under the common law right of access. *See In re Avandia*, 924 F.3d at 675; *Westinghouse Elec. Corp.*, 949 F.2d at 660. Furthermore, just as the Parties were required to show that sealing was justified under the common law right-of-access standard, the Court also was required to consider and articulate why that standard was or was not met, *id.*, by evaluating whether "the material [was] the kind of information that courts will protect and that disclosure [would] work a clearly defined and serious injury to the party seeking disclosure." *Miller*, 16 F.3d at 551 (internal quotation omitted). The Court was also required to consider the documents on a document-by-document basis. *See In re Avandia Mktg.*, 924 F.3d at 673; *Leucadia*, 998 F.2d at 167 (explaining that a broad-brush approach to reviewing documents "was inconsistent with [the Third Circuit's] prior statements that careful

factfinding and balancing of competing interests [was] required before the strong presumption of openness can be overcome by the secrecy interests of private litigants.").

Here, the Court did not balance competing interests before granting the Parties' Stipulation and made no findings about submissions to the arbitration panel. The Court's Order stated only that it was granting the Parties' request "upon consideration" of the Stipulation. This does not satisfy the common law right-of-access standard's requirement for the Court to articulate "the compelling, countervailing interests to be protected" by sealing, accompanied with "specific findings on the record concerning the effects of disclosure." *In re Cendant Corp.*, 260 F.3d at 194 (emphasis omitted). A failure to articulate any reason whatsoever cannot amount to "specific findings on the record." *See id.*

### C.     The Parties' Arguments for Sealing Do Not Satisfy Third Circuit Law on the Common-Law Right of Access

The Parties' statements in support of sealing did not meet the substantive showing required to overcome the "strong presumption" in favor of access. The Parties' Stipulation seeks to seal documents primarily because they are concerned "with the potential inadvertent disclosure of any personally identifying or other sensitive information that may have been discussed or referred to in the deposition transcripts." *See* Joint Stipulation to File Portions of App. Under Seal at 1–3. It is this justification, they argue, that warrants sealing the entirety of numerous depositions of the Named Plaintiffs, expert and summary reports, and a response to a statement of material facts. This asserted justification cannot rebut the "strong presumption" in favor of access, at least not as broadly as the Parties seek confidentiality protection.

Even in *In re Avandia*, the district court did not seal entire documents such as a statement of material facts but rather allow the publicly filed versions to be redacted. *See id.* at 676. While there may be privacy interests in protecting the confidentiality of social security numbers, credit

12

reports or the like, there is no reason why the Parties cannot simply redact any such information. Furthermore, even putting aside the possibility of redaction, reliance on the existence of personally identifying information as grounds for sealing an entire expert report, deposition, or response to a statement of material facts does not comport with the common law right of access. "Vague assertions" of privacy interests are "insufficient to overcome [the] strong presumption" in favor of access. *Id.* (citing *LEAP Sys.*, 638 F.3d at 221–22).

The First Amendment also supports access here. Although the *Avandia* majority declined to reach the question, *id.* at 680, Judge Restrepo's concurrence in *Avandia* concluded that the First Amendment right of access applied to summary judgment filings, explaining that "there is no principled basis to hold that the First Amendment right of public access extends to records of civil trials, but not records submitted in connection with motions for summary judgment." *Id.* at 683 (Restrepo, J. concurring); *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Any restriction on the right of public access must be "evaluated under strict scrutiny." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013). "The party seeking closure may rebut the presumption of openness only if able to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *In re Avandia*, 924 F.3d at 673 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984)). That standard has not been satisfied here, for the reasons discussed above.

## **CONCLUSION**

For the reasons discussed above, the Court should unseal the following portions of the summary judgment and class decertification filings:

- Tabs 33–45 and 56 of the Appendix to Defendant PNC's Motion for Summary Judgment and Decertification of Class (ECF No. 722);

- Plaintiffs' Response to the Motion for Summary Judgment's Statement of Material Facts (ECF No. 727), and

- Tabs 69, 73, 143, and 162 of the Appendix to Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment and Decertification of Class (ECF No. 733).

- All documents submitted to the arbitration panel that set the value of the settlement of this case.

Dated: February 16, 2021

Respectfully submitted,

HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER

By: */s/ Ronald P. Schiller*
    Ronald P. Schiller (PA No. 41357)
    Sharon F. McKee (PA No. 81499)
One Logan Square, 27th Square
Philadelphia, Pennsylvania 19103
(215) 568-6200 (telephone)
(215) 568-0300 (facsimile)
rschiller@hangley.com
smckee@hangley.com

*Attorneys for Movant Steadfast Insurance Company*

**OF COUNSEL**:

STEPTOE & JOHNSON LLP
Harry Lee, Esq.
John O'Connor, Esq.
Alexandra R. Galdos, Esq.
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-8112 (Telephone)
(202) 429-3902 (Facsimile)
hlee@steptoe.com

KAUFMAN DOLOWICH & VOLUCK, LLP
Patrick M. Kennell, Esq.
Kevin M. Mattessich, Esq.
60 Broad Street – 36th Floor
New York, New York 10038
(212) 458-9600 (Telephone)
(212) 485-9700 (Facsimile)
pkennell@kdvlaw.com
kmattessich@kdvlaw.com

joconnor@steptoe.com
agaldos@steptoe.com

*Attorneys for Defendant Clarendon National
Insurance Company*

ROBINSON & COLE LLP
Lawrence Klein, Esq.
J. Gregory Lahr, Esq.
Soo Y. Kim, Esq.
Chrysler East Building
666 Third Avenue, 20th floor
New York, NY 10017
(212) 451-2933 (Telephone)
(212) 451-2999 (Facsimile)
lklein@rc.com
glahr@rc.com
skim@rc.com

*Attorneys for Certain Interested Underwriters
at Lloyd's, London*

WILEY REIN LLP
Cara Tseng Duffield, Esq.
Karen Toto, Esq.
1776 K Street NW
Washington, DC 20006
(202) 719-7000 (Telephone)
(202) 719-7049 (Facsimile)
cduffield@wileyrein.com
ktoto@wileyrein.com

*Attorneys for Defendant Twin City Fire
Insurance Company*

CAHILL GORDON & REINDEL LLP
Thorn Rosenthal, Esq.
Samuel G. Mann, Esq.
Tamara M. O'Flaherty, Esq.
80 Pine Street
New York, New York 10005
212-701-3000 (Telephone)
212-269-5420 (Facsimile)
trosenthal@cahill.com
smann@cahill.com

*Attorneys for Defendant Continental Casualty
Company*

ARNOLD & PORTER, KAYE SCHOLER
LLP
Kent A. Yalowitz, Esq.
Daniel Bernstein, Esq.
250 West 55th Street
New York, New York  10019
(212) 836-8000 (Telephone)
(212) 836-8689 (Facsimile)
kent.yalowitz@arnoldporter.com
daniel.bernstein@arnoldporter.com

*Attorneys for Defendant North American
Specialty Insurance Company*

KAUFMAN BORGEEST & RYAN LLP
Scott A. Schechter, Esq.
Paul T. Curley, Esq.
Patrick Stoltz, Esq.
Matthew E. Mawby, Esq.
200 Summit Lake Drive, 1st Floor
Valhalla, New York 10595
(914) 449-1000 (Telephone)
(914) 449-1100 (Facsimile)
sschechter@kbrlaw.com
pcurley@kbrlaw.com
pstoltz@kbrlaw.com
mmawby@kbrlaw.com

*Attorneys for Defendant St. Paul Mercury
Insurance Company*

toflaherty@cahill.com

*Attorneys for Defendant Swiss Re International S.E. (formerly known as SR International Business Insurance Company Ltd.*